IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| TODD ALLEN MOORE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. EP-14-CV-285-MAT |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of the Western District of Texas. For the reasons set forth below, the Commissioner's decision is AFFIRMED.

### I. PROCEDURAL HISTORY

On February 2, 2012, Plaintiff filed an application for DIB[1] in which he alleged disability beginning June 15, 2011 due to seizures, panic attacks, right/left shoulder, back problems, hepatitis

---

[1] Plaintiff also filed an application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act, but it was denied because Plaintiff's resources exceeded the limits. (R. 313-320).

1

C, memory loss, right elbow, bilateral hernia problems, osteoporosis of the back, anxiety, and depression. (R. 381-388, 413).[2] Plaintiff was 49 years old at the time of filing. (R. 381). He has previous work experience as construction laborer and a customer service representative. (R. 299, 421).

After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (R. 321-325, 327-330, 331-332). On February 14, 2013, he appeared with his attorney for a hearing. (R. 280-303). On May 3, 2013, the ALJ issued a written decision denying benefits on the ground that Plaintiff is able to perform jobs that exist in significant numbers in the national economy; therefore, he is not disabled. (R. 259-279). On July 23, 2014, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision. (R. 1-5).

## II. ISSUE PRESENTED

Whether the ALJ's residual functional capacity ("RFC") finding is supported by substantial evidence.

## III. DISCUSSION

### A. Standard of Review

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).

---

[2] Reference to the record of administrative proceedings is designated by (R.[page number(s)]).

Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

In determining whether there is substantial evidence to support the findings of the Commissioner, the court must carefully examine the entire record, but may not reweigh the evidence or try the issues *de novo*. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). The court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). If the Commissioner applied the proper legal standards and her findings are supported by substantial evidence, they are conclusive and must be affirmed. *Id.*

B. Evaluation Process and Burden of Proof

Disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step sequential process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or equals the severity of an impairment listed in

3

20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment or combination of impairments prevents the claimant from performing past relevant work; and, (5) whether the impairment or combination of impairments prevents the claimant from doing any other work. 20 C.F.R. §§ 404.1520, 416.920. A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Greenspan*, 38 F.3d at 236.

The claimant bears the burden of proof on the first four steps of the sequential analysis. *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995). Once this burden is met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). The Commissioner may meet this burden by the use of opinion testimony of vocational experts or by use of administrative guidelines in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982). If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that she is unable to perform the alternative work. *Id.*

C. The ALJ's Decision

In her written decision, the ALJ determined as a threshold matter that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016. (R. 264). At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date of June 15, 2011. *Id.* At step two, the ALJ determined Plaintiff has severe impairments consisting of seizures; lumbrosacral spondylosis[3]; hepatitis C; right shoulder impingement syndrome

---

[3] Spondylosis is a general term for degenerative spinal changes due to osteoarthritis. DORLAND'S ILLUS. MEDICAL DICTIONARY 1684 (29th ed. 2000).

status post-surgery; hernia; depression; anxiety; and, alcohol dependence. *Id.* At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 264-266).

Before reaching step four, the ALJ assessed Plaintiff's RFC and found he is able to perform light work,[4] except that he can never climb ladders, ropes, or scaffolds; can occasionally reach overhead with the right dominant hand; must avoid even moderate exposure to moving machinery and unprotected heights; should be in a position that is not in the food industry; and, is limited to simple, routine, and repetitive tasks. (R. 267). In making this RFC assessment, the ALJ determined Plaintiff's allegations regarding the intensity, persistence and limiting effects of his symptoms were not entirely credible. (R.271-272).

At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as a construction laborer or as a customer service representative. (R. 272). At step five, using Rules 202.21 and 202.14 of the Medical-Vocational Guidelines[5] as a framework and based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy and, therefore, is not disabled. (R. 272-274).

D. Analysis of Plaintiff's Claim

Plaintiff contends the RFC determination is not supported by substantial evidence because

---

[4] Light work is defined in the regulations as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category if it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

[5] Codified at 20 C.F.R. Part 404, Subpart P, Appendix 2.

the ALJ failed to properly consider his back and right shoulder pain. Plaintiff argues the evidence supports the inclusion of a sit/stand option to accommodate his back condition, and also supports limitations regarding repetitive lifting/carrying to accommodate his right shoulder condition.[6]

RFC is defined as the most an individual can still do despite his limitations. 20 C.F.R. § 404.1545; SSR 96-8p. The responsibility to determine the claimant's RFC belongs to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making this determination, the ALJ must consider all the record evidence and determine Plaintiff's abilities despite his physical and mental limitations. 20 C.F.R. § 404.1545. The ALJ must consider the limiting effects of Plaintiff's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545; SSR 96-8p. The relative weight to be given to the evidence is within the ALJ's discretion. *See Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001) (citing *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988). The ALJ is not required to incorporate limitations in the RFC that she did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

Plaintiff bears the burden to establish disability and to provide or identify medical and other evidence of his impairments. *See* 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(c). A medically determinable impairment must be established by acceptable medical sources. 20 C.F.R. § 404.1513(a). Plaintiff's own subjective complaints, without supporting objective medical evidence, are insufficient to establish disability. *See* 20 C.F.R. §§ 404.1508, 404.1528, 404.1529.

There is no medical opinion in the record with regard to Plaintiff's alleged need for a sit/stand option or assessing functional limitations inconsistent with a limited range of light work.

---

[6] Plaintiff does not challenge the mental RFC findings.

In support of his claim that the evidence supports such limitations, Plaintiff cites to his testimony and reports of severe pain and extreme functional limitations. (ECF No. 22, Pl's Brief, p. 5). He additionally relies on x-ray findings and treatment records, including the use of a TENS[7] unit to manage pain and a prescribed cane to assist with ambulation. *Id.* Plaintiff also complains the ALJ failed to discuss the consultative physical examiner's finding that Plaintiff exhibited reduced range of motion and pain to his lumbar spine and right shoulder. (ECF No. 22, Pl's Brief, pp. 5-6).

As discussed by the ALJ, Plaintiff underwent a consultative physical examination on March 22, 2012 performed by Augustine O. Eleje, M.D. (R. 506-515). Plaintiff reported a 25 year history of bilateral hernias which were surgically repaired. (R. 512). He indicated lifting worsened this condition. *Id.* Dr. Eleje noted Plaintiff was not experiencing any signs or symptoms, and concluded the severity of this condition was resolved. *Id.* Plaintiff also reported a liver condition for the past six years as a result of Hepatitis C infection. *Id.* He denied any associated signs or symptoms, but reported the severity is worsening over time. *Id.* Plaintiff reported right elbow pain as a result of a motor vehicle accident 12 years earlier. *Id.* This condition has been treated with prescription medication and surgery. *Id.* He indicated lifting makes it worse. *Id.* He rated the sharp pain in his elbow at 9 on a scale of 1 to 10 with 10 being the worst. *Id.*

Plaintiff also reported a seizure condition, with the last seizure nine months ago. *Id.* He claimed having generalized tonic-clonic[8] episodes about once every two years. *Id.* He reported this condition responded to medication and was improving. *Id.* He also reported bilateral shoulder pain

---

[7] TENS stands for transcutaneous electrical nerve stimulation. http://www.tensunits.com/ (Last visited September 15, 2015).

[8] Tonic-clonic is a spasm or seizure consisting of a convulsive twitching of the muscles. DORLAND'S ILLUS. MEDICAL DICTIONARY 1849 (29th ed. 2000).

with decreased range of motion and diminished ability to perform activities of daily living. *Id.* This condition resulted from a motor vehicle accident 22 years ago, and past treatments include prescription medications and surgery. *Id.* He described the pain as stabbing, and rated it at 8 on the pain scale. *Id.* Plaintiff also reported low back pain and stiffness for the past three years that occurred as a result of an injury during a seizure. *Id.* He described the pain as throbbing, and rated it at 8 on the pain scale. *Id.* The report states past treatments for this condition include prescription medications and surgery. *Id.* The record, however, does not show support the alleged back surgery; It indicates Plaintiff fell in September 2012 and broke a rib. (R. 268, 819-835).

On physical examination, Dr. Eleje noted Plaintiff was well developed and nourished and in no apparent distress. (R. 513). His gait and station revealed normal hand swing with normal heel and toe and tandem walking. (R. 514). He was able to hop, squat, pick up a pen, and button his clothes. *Id.* Hand strength was 5/5 bilaterally. *Id.* Musculoskeletal exam revealed symmetric strength, normal muscle tone, no atrophy, and no abnormal movements. *Id.* An x-ray of the right shoulder showed a suspected grade 1 acromioclavicular separation. *Id.* Right shoulder range of motion was limited as follows: 90 degrees flexion with pain, 30 degrees extension with pain, 20 degrees adduction with pain, 60 degrees abduction with pain, 10 degrees internal rotation with pain, and 20 degrees external rotation with pain. *Id.* Dr. Eleje noted the "significant crepitus and instability about the shoulder." *Id.* Left shoulder range of motion was normal. *Id.* Right elbow range of motion showed 130 degrees flexion without pain and 0 degrees extension without pain. *Id.* There was no swelling, deformity, or crepitus. *Id.* Lumbar spine exam showed 45 degrees flexion with pain, 10 degrees extension with pain, and 30 degrees bending to either side with pain. *Id.* Straight-leg raise was negative in both sitting and supine positions. *Id.* Neurological exam

findings were normal. *Id.* Dr. Eleje's assessment was right shoulder impingement syndrome, lumbosacral spondylosis without myelopathy[9], generalized convulsive epilepsy without mention of intractable epilepsy, arthritis of right elbow, and hepatitis C (chronic). *Id.* Dr. Eleje opined Plaintiff's alleged pain does not correspond to the findings on examination. (R. 513). He further concluded Plaintiff has limitations with lifting and carrying, but no limitations with sitting, standing, moving about, handling objects, hearing, or speaking. (R. 515).

Contrary to Plaintiff's contention, the ALJ specifically noted Dr. Eleje's "[p]hysical examination showed significant crepitus and instability of the right shoulder with reduced range of motion of the right shoulder, right elbow, and spine." The ALJ properly assigned great weight to the opinion of Dr. Eleje as she determined it was "consistent with the reliable evidence of record and based on a thorough and precise examination grounded on trusted objective techniques." (R. 270). The ALJ limited Plaintiff to light work that does not require climbing ladders, ropes, or scaffolds, and that requires no more than occasional overhead reaching with the right dominant hand. (R. 266-267).

On April 23, 2012, Shabnam Rehman, M.D., a state agency medical consultant ("SAMC"), reviewed Plaintiff's medical records, including Dr. Eleje's consultative examination report, and concluded Plaintiff could perform medium work[10], but his right overhead reaching was restricted to an occasional basis, and he required seizure precautions of avoiding open flames and unprotected

---

[9] Myelopathy is any of various functional disturbances or pathological changes in the spinal cord. DORLAND'S ILLUS. MEDICAL DICTIONARY 1167 (29th ed. 2000).

[10] Medium work involves lifting more than 50 pounds at a time with frequent lifting or carrying of objects weighing 25 pounds or more. If someone can do medium work, he can also do sedentary and light work. 20 C.F.R. § 404.1567(c).

heights. (R. 716-723). On June 26, 2012, SAMC Nancy Childs, M.D., affirmed Dr. Rehman's findings. (R. 732). "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR-96-6p, 1996 WL 374180 at *1; *See* C.F.R. § 404.1527(e)(2)(i). In this case, the ALJ correctly noted the non-examining state medical consultants' opinions were consistent with the determination that Plaintiff is capable of significant work-related activities. She properly gave limited weight to their opinions, however, because she determined Plaintiff's RFC was more appropriately placed in the light exertional category. (R. 270). *See Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005) (When good cause is shown, an ALJ may give less weight, little weight, or even no weight to any opinion).

In her written opinion, the ALJ thoroughly discussed Plaintiff's back condition, including the old appearing compression fracture deformity of the T10 vertebral body discovered in November 2011. (R. 269, citing R. 526). The ALJ noted Plaintiff was prescribed medications, attended physical therapy, and used a TENS unit. (R. 269). She also observed that treatment notes (dated October 17, 2011) showed his back had normal curvature; there was no pain on pressure applied along the thoraco-lumbar spine; and, no paraspinal muscle spasm was noted. (R. 269, citing R. 681). The ALJ further noted Plaintiff reported the pain medication was helping, and the medical records show he had good results with the TENS unit. (R. 269, citing R. 779, 797). The mere presence of some impairment, however, is not disabling per se. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). It is the degree of resulting functional limitation that matters. *Id.*

Regarding Plaintiff's reliance of his use of a cane to support his need for a sit/stand option, Dr. Eleje observed in March 2012 that Plaintiff was "ambulatory without assistance" with a normal

gait and station, and normal arm swing and heel-toe and tandem walking. (R. 514). While the record shows he was prescribed a cane on September 13, 2013, it was not within the relevant period which began on the alleged onset date of June 15, 2011 and ended on May 3, 2013, the date of the ALJ's written decision. The progress notes dated September 13, 2013 state Plaintiff demonstrated "minimal antalgia." (R. 135). Although Plaintiff's brief suggests the cane was prescribed because of lower back pain, the notes state he requested the cane because his left knee gives out on occasion due to epilepsy. *Id.* This statement conflicts with Plaintiff's reports and testimony that his last seizure occurred in June 2011. (R. 286, 762). Significantly, the physical therapist also noted Plaintiff demonstrated a good ability to ambulate using the cane in his right hand despite his previous report of shoulder pain. (R. 136).

In her written opinion, the ALJ found Plaintiff was not fully credible. (R. 271-272). She noted that despite his allegations of disabling symptoms and limitations, Plaintiff is able to engage in activities that are not as limited as one would expect, including the ability to get out often, tend to his personal needs slowly, complete stretching exercises, do light chores (with rest periods) of vacuuming and washing the dishes, spend time with others, and attend church. (R. 268). Assessment of credibility is the province of the ALJ, and her credibility determination is entitled to great deference. *Greenspan*, 38 F.3d at 237; *Newton*, 209 F.3d at 459. Plaintiff's own subjective complaints, without supporting objective medical evidence, are insufficient to establish disability. *See* 20 C.F.R. §§ 404.1508, 404.1528, 404.1529. The objective medical evidence does not support Plaintiff's allegations of extreme pain and limitations. *See Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) (subjective complaints unsubstantiated by medical findings need not be credited over conflicting medical evidence). Simply stated, the evidence cited by Plaintiff does not support the

need for either a sit/stand option or further limitations in his RFC than those assessed by the ALJ.

The task of weighing the evidence is the province of the ALJ. *Chambliss*, 269 F.3d at 523. The task of the Court is merely to determine if there is substantial evidence in the record as a whole which supports the ALJ's decision. *Id.*, citing *Greenspan*, 38 F.3d at 240. As substantial evidence supports the ALJ's decision, it must be affirmed

## CONCLUSION

It is therefore ORDERED that the decision of the Commissioner be, and it is hereby, AFFIRMED.

SIGNED and ENTERED this 23rd day of September, 2015.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE